This is an original proceeding to discipline or disbar John J. Garrity, an attorney at law, instituted by the State Bar Board. Hon. George H. Moellring one of the judges of the Fifth judicial district was appointed as referee, the testimony was taken and the referee made his findings and conclusions thereon to this court in substance, that John J. Garrity did convert $108.68 of his client's money.
On the second day of November, 1927, John J. Garrity entered into a contract in writing with John Van Arnam, the material part of which is as follows:
"Whereas, the said party of the first part has delivered to party of *Page 455 
the second part a certain transcript of judgment wherein Robert D. Beery is plaintiff and August Peterson is defendant, which judgment is in the sum of $311.50 and interest from Aug. 15, 1925, for collection, and the said party of the first part agrees to accept the sum of $200 (Two Hundred Dollars) in full settlement thereof, and to satisfy the same upon the remittance to him of said sum of $200.
"Dated November 2, 1927."
Contract is signed by both parties. The next day, November 3, 1927, they entered into another agreement by the terms of which John Van Arnam turned over to John J. Garrity a number of notes and judgments the original notes to be returned about December 24, 1927, and remittance upon collections to be made upon payment of money.
On December 12, 1927, John J. Garrity as shown by "exhibit 4" receipted for a large number of judgments and notes which receipt contains the following provision:
"Received the above notes and judgments for collection, from John Van Arnam, Kindred, N. Dak. at an agreed commission on amount collected of 20 percent. To be remitted to the said John Van Arnam as soon as collected. All notes and judgments to be returned to the said Van Arnam on demand." Signed, "John J. Garrity."
On March 23, 1928, Garrity wrote to Robert Beery stating, "I looked up the record at Bismarck sometime ago and found that he owns a quarter, free of incumbrance; he is an unmarried man, and I see no reason why we cannot enforce our judgment by executions. As to the costs, the execution and copy would cost $1.50 advertising and sheriff fees would probably total $30; recording, etc., a few dollars more. I do not know of any other expenses at this time. If you wish to proceed by execution, please have the papers issued at clerk's office at Fargo and send them."
Burdick and Shaft of Fargo, North Dakota, were attorneys for Beery and obtained for him many judgments, among them the Peterson judgment. When Garrity attempted to collect the Peterson judgment, F.O. Hellstrom, an attorney at Bismarck, served upon Burdick and Shaft a notice of motion to vacate the judgment, which came on for a hearing before the court at Fargo, North Dakota, at which hearing Burdick and Shaft appeared for Beery, and resisted the motion. The motion was denied, and sometime thereafter, Mr. Hellstrom *Page 456 
brought another proceeding to vacate the said judgment, which was also denied after hearing and from the order overruling the motion an appeal was taken to the supreme court, Burdick and Shaft appearing as attorneys for Mr. Beery and the order overruling the motion was affirmed.
On September 21, 1928, Burdick and Shaft wrote Garrity stating: "We wrote you a number of times this summer about the execution, but received no reply. I wrote the sheriff about the matter and he reported that the sale was advertised for October 8th. Being unable to find out where you had gone I instructed the sheriff to deal with us in the matter. I got a copy of the notice, found out that it was wrong. I stopped publication, and the next day I got a notice from Hellstrom of appeal from the order denying motion to vacate the judgment. If we win in this matter in the Supreme Court and get the judgment paid out of the surety bond, what fees you have in the case will be remitted to you. We should appreciate your informing us what your fees will be, as there will be no further service in this case necessary from your end since we need now look only to the appeal bond."
On September 22, 1928, Garrity wrote Burdick saying: "I willleave the whole matter to you from today our agreement when the claim was given to me was that I am to receive all over $200 on the Peterson judgment."
Garrity collected $135.85 on the Beery notes and after repeated demands refused and failed to pay over to Mr. Beery or John Van Arnam any part of it. Garrity admits that he collected the money and refused to turn the same over, for the reason, as he claimed that he was to receive for his services in connection with the Peterson judgment approximately $200. In answer to one demand he wrote: "The judgment as you know has been satisfied, and the proceeds paid to Mr. Burdick according to the records in my office, there is due on the same the sum of $398.46 of which amount according to our contract I am entitled to the sum of $198.46. There is a balance due you on other collections amounting to $108 leaving a balance due me of $96.46." Mr. Garrity's contract will not bear any such construction. It is clear from the contract that Mr. Van Arnam was to have $200. He agreed to satisfy the judgment upon receipt of $200. As a matter of course, *Page 457 
whatever expense there was in the collection of the judgment would have to be borne by Garrity. The issuing of the execution, the publishing of the notice of sale, the expenses and attorney fees in connection with the motions to vacate the judgment and the appeal to the supreme court were all costs incident to the collection of the judgment which would have to be borne by the collector, for it is clear from the contract that Mr. Van Arnam was to have $200 in the clear.
Burdick wrote to Garrity and told him "There will be no further services necessary from your end," and asked for his fees. Garrity answered and said: "I will leave the whole matter to you from today."
The attorney fees and the expenses estimated by Garrity amount to over $180 and under his contract there would be less than $20 coming to him, but he was not held to his contract. Burdick offered him $50 and in his letter of September 22d 1928, he turned the collection over to Burdick. In answer to Burdick's letter telling him his services are no longer necessary, he said in reply: "I will leave the whole matter to you from today." Mr. Garrity has had much experience in collecting and must know that he did wrong in refusing to turn over on demand the money collected for his client.
Under § 800, Comp. Laws 1913, "The license of an attorney and counsellor at law may be revoked or suspended when he has committed a felony, or a misdemeanor involving moral turpitude."
Under § 805, Comp. Laws 1913, "An attorney who receives money or property of his client in the course of his professional business and who refuses to pay or deliver the same to the person entitled thereto within a reasonable time after demand is guilty of a misdemeanor."
In Re Kirby, 10 S.D. 322, 414, 39 L.R.A. 856, 73 N.W. 92, the South Dakota Supreme Court in construing this section of the law said: "Everything done contrary to justice, honesty, modesty, or good morals, is done with turpitude." 2 Bouvier's Law Dict. 618. "If it is not dishonest and contrary to good morals to receive property of another, and convert it to one's own use and gain, knowing it to have been stolen, we are at a loss to know of what honesty and good morals consist."
In that case the property converted was stolen, and in the instant case, it was money collected which belonged to another and was kept and converted by respondent knowing that it belonged to another, so *Page 458 
that the principle involved is the same. It involves moral turpitude. The record fully sustains the finding and conclusion of the referee that the respondent converted $108.68 of his client's money.
The judgment of the court is that the license of the accused to practice in the courts of this state be, and the same is hereby revoked and cancelled, and the clerk of this court is directed to strike his name from the roll of attorneys.
BIRDZELL, NUESSLE, and BURR, JJ., concur.
Mr. Chief Justice CHRISTIANSON did not participate.